# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re:  Jeremy Michael Vigil and                                  No. 07-11403 MA
        Christy Renee Vigil,

        Debtors.
_____

United States Trustee,

        Plaintiff,
                                                                  Adv. No. 08-1059 M
v.

Jeremy Michael Vigil and
Christy Rene Vigil,

        Defendants.


## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER is before the Court following a trial on the merits to determine whether the discharge of Defendants, Jeremy Michael Vigil and Christy Rene Vigil ("Debtors") under 11 U.S.C. §727(d) should be revoked. Plaintiff United States Trustee asserts that Debtors' failure to disclose in their statements and schedules that they owned a lot in Milan, New Mexico, and their subsequent transfer of the lot to Mr. Vigil's father following the Trustee's discovery of the asset constitutes a transfer of property with the intent to hinder, delay or defraud a creditor after the date of the filing of the petition in violation of 11 U.S.C. §727(a)(2)(B). Plaintiff further asserts that Debtors made statements at the creditor's meeting and in their statements and schedules that (1) the value of a 2002 Honda motorcycle was $2,200; (2) they had no interest in real property other than what was listed on schedule A when in fact they owned a lot in Milan, New Mexico; and (3) the amount Jeremy Vigil paid for gasoline on a monthly basis for travel to and from

1

Grants, New Mexico was $600.00, constitute false oaths within the meaning of 11

U.S.C.§727(a)(4)(A). After consideration of the evidence presented at trial, and the testimony of

the Debtors, and being otherwise sufficiently informed, the Court finds that (1) the Debtors'

transfer of the Milan property post-petition supports a claim to deny the Debtors' discharge

under 11 U.S.C. §727(a)(2)(B); and (2) that Debtors' misstatements and omissions contained in

their schedules and statements support a claim to deny the Debtors' discharge under 11 U.S.C.

§727(a)(4)(A). In reaching this determination the Court enters the following findings of fact and

conclusions of law in accordance with Rule 7052, Fed.R.Bankr.P.

## FINDINGS OF FACT

1. Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code along with the Statement of Financial Affairs ("SOFA") and Schedules A through J on June 13, 2007.

2. Debtors' Schedule A reflects ownership of one parcel of real property, Debtors' residence located at 1305 N. 3rd St. Grants, NM 87020. No other real property is listed.

3. On August 26, 2005, the parents of Jeremy Vigil transferred a vacant lot in Milan, New Mexico to Jeremy Vigil. *See Exhibit TR - #12*.

4. Pre-petition, on August 25, 2006, Debtor Jeremy Vigil (Mr. Vigil) sold a 2002 Honda CBR/954 Motorcycle ("2002 Honda") to George Houser for $6,750.00. See Exhibit TR #9. Mr. Houser testified that he purchased the 2002 Honda in August 2006. *Id.*

5. Debtors' Schedule B reflects ownership of the 2002 Honda valued at $2,200.

6. Debtors exempted the stated value of $2,200 for the 2002 Honda on their Schedule C.

7. Debtors' Schedule D reflects a debt owed to American Honda Finance Corp. and values the motorcycle at $2,200.

2

8. Debtors' Statement of Intention reflects their intention to retain the 2002 Honda and continue making regular payments..

9. In response to the request in paragraph 10 of the SOFA for information concerning "Other Transfers" made within the two year period preceding the commencement of the bankruptcy proceeding, Debtors reported "none".

10. Debtors' Schedule J lists payments of $600 for transportation.

11. On July 23, 2007 at Debtors' meeting of creditors, Debtors stated under oath that they reviewed the schedules and statements and verified that the information contained therein was true and correct.

12. At Debtors' meeting of creditors, Debtors testified as follows:

    a. Mr. Vigil testified that he spends $150.00 per week on fuel because he travels from Grants to Albuquerque to work.

    b. Mr. Vigil testified that the 2002 Honda would be paid off in six months and that at that time he would probably sell it. Mr. Vigil further testified that he wasn't using the 2002 Honda as of the date of the creditor's meeting.

13. At the meeting of creditors, Debtors never informed the Trustee that there were any omissions or mis-statements that needed to be corrected.

14. Mr. Vigil transferred the Milan property to his parents on March 20, 2008. *See Exhibit TR - #13.*

15. Mr. Vigil was deposed on January 18, 2008 and on November 10, 2008. He testified that he sold the 2002 Honda after the filing of the petition, around July or August 2007. He further testified that he sold the motorcycle for $6,800.00. At one point, he testified that the

value of the 2002 Honda was actually $12,000.00 or $12,500.00.

16. During his deposition in November 2008, Mr. Vigil testified that his monthly fuel expenses were $600.00.

17. Margaret Pimentel is the office manager for MasTec. Mr. Vigil was employed by MasTec during the pendency of Debtors' bankruptcy proceeding.

18. Ms. Pimentel testified that Mr. Vigil was a supervisor at MasTec and was assigned a company vehicle. She testified that all company vehicles are assigned a fuel card which allows employees to refuel company vehicles.

19. Ms. Pimentel further testified that during the time that Mr. Vigil was assigned a company vehicle she did not see Mr. Vigil drive his personal vehicle to work very many times.

20. MasTec fuel records for Mr. Vigil's assigned company vehicle reflect frequent fuel purchases. *See Exhibit TR -#17.*

21. Mr. Vigil testified at the creditors' meeting and in his deposition that he drove to work in Albuquerque and spent $150 per week or $600 per month on fuel. At trial Mr. Vigil testified that he drove the company vehicle every other week.

## DISCUSSION AND CONCLUSIONS OF LAW

A. 11 U.S.C. §727(a)(2)(B) - Transfer or Concealment of Property

To prevail under 11 U.S.C.§727(a)(2)(B), the Trustee must prove that:(1) the debtor transferred, removed, destroyed, mutilated or concealed property; (2) belonging to the estate; (3) post-petition; (4) intending to hinder, delay or defraud a creditor of the estate.[1] Each element

---

[1] See *In re Butler,* 377 B.R. 895, 915 (Bankr.D. Utah 2006)(stating that the elements of 11 U.S.C.§727(a)(2)(a) are "substantially the same as those for 11 U.S.C.§727(a)(2)(b) except that the plaintiff must prove that the debtor transferred or concealed property of the estate after

4

must be proven by a preponderance of the evidence.² Denial of discharge under 11 U.S.C. §727(a)(2)(B) "need not rest on a finding of intent to defraud. Intent to hinder or delay is sufficient."³ Fraudulent intent can be inferred from the surrounding circumstances, and the course of the debtor's conduct.⁴

The United States Trustee asserts that Debtors demonstrated fraudulent intent by continuing a pattern of wrongful behavior. Debtors failed to disclose the vacant land they owned in Milan, New Mexico ("Milan property"). The Milan property had been transferred to Mr. Vigil by his parents on August 26, 2005. The Milan property was not listed on Debtors' Schedule A. At the creditor's meeting held July 23, 2007, Debtors were asked by the Chapter 7 Trustee, Yvette Gonzales, if they read their schedules and statements prepared by their attorney. Debtors testified that they had. Debtors further testified that the schedules and statements were true and correct. At Mr. Vigil's deposition on January 18, 2008, the United States Trustee asked Mr. Vigil whether any assets were missing from the schedules and statements and Mr. Vigil testified that they were all listed.⁵ Debtors testified that they were notified by the United States

---

the bankruptcy petition was filed."); *In re Styanke* 234 B.R. 449, 456(Bankr.W.D. MO 1999).

² *Butler,* 377 B.R. at 915 (citing *Gullickson v. Brown* (*In re Brown*), 108 F.3d 1290,1293 (10th Cir. 1997); *In re Stewart*, 263 B.R. 608, 611-12 (10th Cir. BAP 2001); *First Nat'l Bank v. Serafini* (*In re Serafini*), 938 F.2d 1156, 1157 (10th Cir.1991); *In re King*, 272 B.R. 281, 288 (Bankr.N.D.Okla.2002)); *Colonial Bank v. Johnson* (*In re Johnson*), 301 B.R. 590, 596 (Bankr.N.D.Ala.2003)(burden of proof is on plaintiff to prove all elements of an action under 11 U.S.C. § 727 by a preponderance of evidence).

³ *Butler*, 330 B.R. at 915.

⁴ *In re Searles*, 317 B.R. 368, 379 (9th Cir. BAP Ariz., 2004.)(citing *Emmett Valley Assocs. v. Woodfield* (*In re Woodfield*), 978 F.2d 516, 518 (9th Cir.1992)).

⁵ *See* Exhibit TR#21, p. 24-25.

5

Trustee about the Milan property in March 2008. Mr. Vigil transferred the property back to his parents on March 20, 2008. Although Debtors claim they did not know that the Milan property had been transferred to Mr. Vigil by his parents, they did not attempt to contact the Chapter 7 Trustee to disclose the existence of the asset nor did they amend their schedules and statements to disclose the asset. Debtors testified at trial that they never knew about the Milan property until they were informed during the bankruptcy proceeding in March 2008. They further testified that because they did not have an attorney they did not know what to do.

While the Court finds the Debtors' explanation that they did know about the existence of the Milan property might be credible, their conduct after the discovery is troubling. Mr. Vigil testified at his November 2008 deposition that he was informed about the Milan property in March 2008. He further testified that after discussing the Milan property with his father, he transferred the property back to his parents. Debtors' post-petition transfer of the property during the pendency of the bankruptcy proceeding demonstrates fraudulent intent on the part of the Debtors. The Court finds that the Milan property was property of the estate and that the Debtors transferred the property post-petition with fraudulent intent. Therefore, Debtors discharge should be denied under 11 U.S.C. 727(a)(2)(B).

### B. 11 USC §727(a)(4) - False Oaths

A debtor will be denied a discharge under 11 U.S.C. § 727(a)(4)(A) upon a showing that the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."[6] In order to prevail under 11 U.S.C. § 727(a)(4), the plaintiff must prove by a preponderance of the evidence "that the debtor knowingly and fraudulently made an oath and

---

[6] *The Cadle Company v. King* (*In re King*), 272 B.R. 281, 290-291Bankr.N.D.OK 2002)

that the oath relates to a material fact." [7]  A false statement or omission is material for purposes of 11 U.S.C. § 727(a)(4) "if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property."[8] A false statement contained in a debtor's statements and schedules, as well as omissions of assets, can constitute false oaths within the meaning of 11 U.S.C. § 727(a)(4).[9]  Statements made under oath at a creditor's meeting, answers to interrogatories and deposition testimony can also constitute false statements within the meaning of 11 U.S.C. § 727(a)(4).[10]  A debtor's discharge will not be denied under 11 U.S.C. § 727(a)(4) when the omissions are due to an honest error or mere inaccuracy.[11]

The United States Trustee asserts that Debtors failed to make accurate disclosures on their statements and schedules and then Debtors testified at their meeting of creditors that the schedules and statements were true and correct.  The United States Trustee further asserts that there were material misstatements and omissions contained in the Debtors' statements and schedules regarding assets of the estate.

"Debtors have a duty to fully and accurately disclose all property interests on their

---

[7] *Gullickson v. Brown,* 108 F.3d at 1294.

[8] *In re Davison,* 296 B.R. 841, 847 (Bankr.D.Kan. 2003), *aff'd,* 2004 WL 2852352 (10th Cir. BAP 2004)(quoting 6 Collier on Bankruptcy ¶ 727.04[1][b] at 727-40 (Alan N. Resnick, et al., eds., 15th ed. rev. 2003)).

[9] *King,* 272 B.R. at 291.(citing *In re Calder*, 907 F.2d 953, 955(10th Cir. 1990); *Splawn,* 376 B.R. 747, 760 (Bankr.D.N.M.2007); *In re Lindemann,* 375 B.R. 450, 469 (Bankr.N.D.Ill. 2007) ("A false oath may include a knowing and fraudulent omission.")(citations omitted).

[10] *King,* 272 B.R. at 291; *Splawn,* 376 B.R. at 760; *Lindemann,* 375 B.R. at 469.

[11] *Butler* 377 B.R. at 922 ("an honest mistake or mere inaccuracy is not a proper basis for denial of discharge.")

7

statements and schedules." [12] "The accuracy and completeness of information contained in a debtor's schedules and statement of financial affairs is essential to the successful administration of the case."[13] For this reason, "any deliberate omissions may result in the denial of a discharge."[14] Moreover, neither value nor detriment to creditors is relevant to the determination of whether the omission is "material" within the meaning of 11 U.S.C. § 727(a)(4).[15]

The evidence before the Court shows that the Debtors' schedules and statements contained inaccuracies, itemized as follows:

(1) Debtors omitted the Milan property from Schedule A;

(2) Debtors listed the value of the 2002 Honda on Schedules B and D as $2,200 even though Debtors sold the 2002 Honda in August of 2006 for $6,750.

(3) Debtors failed to disclose the sale of the 2002 Honda in SOFA question number 10 which seeks disclosure of any transfers of property in the two (2) years prior to the filing of the bankruptcy petition.

---

[12] *United States Trustee v. Eppers* (*In re Eppers*), 311 B.R. 826, 832(Bankr.D.N.M. 2004)(citing *Morrel, West & Saffa, Inc. v. Riley* (*In re Riley*), 128 B.R. 567, 569-570 (Bankr.N.D.Okla.1991)).

[13] *DeVoll,* 266 B.R. 81, 98 (Bankr.N.D.Tex. 2001)(citing *In re Lightfoot,* 152 B.R. 141, 149 (Bankr.S.D.Tex. 1993)).

[14] *Id.*

[15] *See DeVoll,* 266 B.R. at 98 ("'[i]n determining whether an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, *or* concerns the discovery of assets, business dealings, *or* the existence and disposition of his property.'")(quoting *Beaubouef,* 966 F.2d at 177 (emphasis added)). *See also Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984) (per curiam)(same)(citing *In re Steiker,* 380 F.2d 765, 768 (3rd Cir. 1967)).

8

(4) Debtors' Statement of Intention disclosed their intent to keep the 2002 Honda and continue making payments despite the fact they had already sold the vehicle.

(5) Debtors' Schedule J disclosed monthly gas expenditures amounting to $600.00. Debtors testified under oath at their creditors meeting on July 23, 2007 that all of the information contained in their schedules and statements was true and accurate. When Mr. Vigil was deposed in January 2008, he testified that the assets were listed correctly but there may be some undisclosed credit cards. At Mrs. Vigil's deposition on January 18, 2008 she also testified that the assets were listed correctly but that a couple of credit cards were not included. As previously discussed, the Debtors omitted the Milan property from their schedules and statements. After discovering that the Milan property was in his name, Mr. Vigil transferred the property to his parents without making any disclosures or amending the schedules and statements.

Mr. Vigil testified at his creditors' meeting, in his depositions, and at trial, that at the time they filed their petition, Debtors still owned the 2002 Honda. Debtors' Statement of Intention reflects that they intended to retain the vehicle and continue making payments which was confirmed by the Mr. Vigil at his January deposition. Mr. Vigil also testified in deposition that the value of the 2002 Honda was between $12,000.00 and $12,500.00 and that at the time the petition was filed they only owed $2,200. Mr. Vigil then testified that he gave his attorney the correct value but that the attorney must have changed the amount. All of this testimony is contradicted by the intake form Debtors completed for their attorney prior to the filing of the bankruptcy petition and by the sales receipt for the 2002 Honda.[16] The intake form disclosed that the 2002 Honda had been sold and listed the value as $2,200.00 with an amount owed of

---

[16] *See* Exhibit TR #28.

9

$4,500.00. The sales receipt for the 2002 Honda was dated August 25, 2006, less than a year before the Debtors filed their bankruptcy petition. The receipt also indicated that the 2002 Honda actually sold for $6,750.00.

Mr. Vigil testified at his creditors' meeting that his transportation expenses were $150.00 per week because he commuted from Grants to Albuquerque. At his January deposition Mr. Vigil testified that his transportation expenses were $600 per month because he "...drives every single day. Sometimes six days a week from Grants to Albuquerque."[17] Then when he was deposed again in November 2008, he testified that he drove to Albuquerque every other week and that his transportation expense was $150.00 every other week.[18] At trial, Mr. Vigil testified that he had a company van that he drove to work every other week and would commute with another employee. He explained that every other week he would drive his personal vehicle to work because he had to take his son to daycare in Albuquerque. The United States Trustee introduced the testimony of Ms. Pimentel, the office manager at MasTec, Mr. Vigil's employer at the time the bankruptcy proceeding was filed. Ms. Pimentel's testimony confirmed that Mr. Vigil was assigned a company van which included a company paid fuel card. When questioned about how many times she saw Mr. Vigil's personal vehicle, Ms. Pimentel testified "not very many."

Debtors assert that any inaccuracies in the schedules and statements were a result of their attorney's failure to include information they provided to him. Debtors further assert that they provided documents and information to their attorney but do not know if he included the

---

[17] *See* Exhibit TR #21 page 30

[18] *See* Exhibit TR #23 page 19-20.

10

information in schedules and statements that were filed. In their Rebuttal to Complaint Seeking Revocation of Debtor's Discharge Under 11 USC §727 and For Other Relief, Debtors state that they "signed the schedules and statements of financial affairs with Steve Mazer, we were never asked to look them over, but to sign the paperwork he prepared."[19] In his deposition in November 2008, Mr. Vigil testified that Debtors made changes to the schedules and statements and returned them to their attorney. At trial Debtors testified that they provided information to their attorney that was not listed correctly in the schedules and statements.

"Reliance on counsel in completing statements and schedules is no defense to material misstatements contained therein..."[20] Debtors have a duty to carefully and accurately complete their statements and schedules, especially since they sign them under penalty of perjury.[21]

Here, Debtors had the opportunity at their creditors' meeting to disclose any information that was either omitted or misstated. Apparently, they chose not to. They attempt to lay blame on their bankruptcy counsel by saying that he did all the talking. Ultimately, it is their responsibility to ensure complete and accurate disclosure. Debtors claim they signed the documents without reviewing them, but later testify that they made changes and returned the changes to their attorney. The Court finds that there are so many inconsistencies between the schedules and statements, Debtors' testimony at the creditors' meeting, Debtors' deposition testimony and other documents prepared by the Debtors which were introduced as exhibits at

---

[19] *See* Exhibit TR- #5, page 2, para.10; page 3, para. 19 (...we never got to review the schedules and affairs, and that Steve Mazer...had verbally gone over the schedules and affairs with us and had us sign them.)

[20] *Eppers*, 311 B.R. at 832-833.

[21] *Id.*

11

trial that Debtors are not credible. Debtors' explanation that the inaccuracies were slight and unintentional as a result of less than perfect communication with bankruptcy counsel or less than perfect understanding of financial terms is equally unbelievable. Debtors cannot pick and choose what information or assets to include on their schedules and statements, nor may they assign random values to assets or expense amounts.

The Court, therefore, finds that the Debtors should be denied discharge under 11 U.S.C. §727(a)(4).

## CONCLUSION

Denial of discharge under 11 U.S.C. §727 must be "construed liberally in favor of the debtor and strictly against the creditor."[22] But because the purpose of the Bankruptcy Code is to provide an honest debtor with a fresh start, its benefits and protections must not be extended to debtors who perpetuate false oaths and statements in their schedules knowingly and with the intent to mislead creditors and the trustee. Section 727(a)(4) enforces the "debtor's duty of disclosure . . . to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate."[23] Based on the evidence and testimony, the Court concludes that the Debtors' failure to fully disclose the ownership of the Milan property, the sale of the 2002 Honda and the use of the company truck alleviating Mr. Vigil's need to purchase gas to commute to work in their statements and schedules, at their creditor's meetings, and in depositions constitute false oaths sufficient to deny the Debtors' discharge under 11 U.S.C. §727(a)(4)(A). The Debtors post-petition transfer of the Milan property constitutes

---

[22] *Brown,* 108 F.3d at 1292 (citing *In re Aldman,* 541 F.2d 999, 1003 (2nd Cir. 1976)).

[23] *Lindemann,* 375 B.R. at 469 (citations omitted).

evidence sufficient to support denial of discharge under 11 U.S.C. §727(a)(2)(B).

A judgment consistent with these findings of fact and conclusions of law will be entered.

/s/ Mark B. McFeeley
MARK B. McFEELEY
United States Bankruptcy Judge

Entered on Docket Date: October 9, 2009
Copies to:

Office of the United States Trustee
Leonard K Martinez-Metzgar
PO Box 608
Albuquerque, NM 87103-0608

Paul M. Fish
Tonn Kimball Petersen
Modrall, Sperline, Roehl, Harris & Sisk
PO Box 2168
Albuquerque, NM 87103-2168
Attorneys for Debtors

13